## Kienzle v. Butler Area School District

*Leo M. Stepanian,* for plaintiffs.
*Charles E. Dillon,* for defendants.

KIESTER, *P.J.,* August 24, 1977 — Plaintiff taxpayers maintain that the action of the school board in awarding student transportation contracts to

Tuck, Kaltenbaugh and Bryan Bros. is invalid. Inter alia, plaintiffs ask that the court enjoin defendants from entering into those contracts.

In brief, the relevant facts are that the majority of the school board restricted negotiations to three contractors who were currently engaged in transporting children for the school district. These contractors were permitted to divide the transportation routes amongst themselves and then negotiate for a contract covering an assigned route without competition amongst themselves or with others.

Defendant argues that bargaining position of the school board committee was supported by the possibility of the exercise of a renewal option for another year with Route 38 Bus Lines and Kaltenbaugh.

As shown by the findings of fact, the 1977-78 contracts were awarded in substantially increased amounts over the available renewal options.

School transportation contracts are service contracts. This is in contrast to contracts for supplies where the contract must be awarded to the "lowest responsible bidder" if the amount involved exceeds $1,500: Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §8-807.1.

The School Code authorizes the school board to provide free bus transportation for pupils but makes no provision for public bidding, private negotiations or school district ownership and operation of a school bus transportation system. The school board is not required by law to advertise for bids or even to award the contract to the lowest responsible bidder.

A school board in its discretion may negotiate a contract for the transportation of school children so long as it is done in good faith, not arbitrarily and not capriciously. This is the sole criteria currently available to guide a school board in awarding pupil transportation contracts.

The Butler Area School Board had the right to include or exclude Route 38 Bus Lines from the negotiations as long as the decision was not based on an improper or illegal reason. For example, personal friendship, enmity, a relationship or a political obligation as a reason would constitute arbitrary and capricious action.

It is noted that there is no provision in the law that requires a school board to state a reason for the awarding of a school bus contract. As a rule the record should speak for itself. Generally, a number of valid reasons and arguments will exist supporting a vote for a particular contractor. It certainly behooves the members of a school board to avoid any appearance of impropriety in the awarding of a contract. Inasmuch as there is no duty to award the contract to the lowest responsible bidder, it was proper but unnecessary for the school board to declare Route 38 Bus Lines an irresponsible bidder. The action of the majority of the school board in this respect was neither arbitrary nor capricious. It must be assumed from the record that the action was taken in good faith.

The power to negotiate school transportation contracts is not unqualified. The money expended by a school board is public money. It is a trust fund. A school director is in a fiduciary capacity. The Supreme Court of Pennsylvania has stated:

". . . The school directors office is important; the director must familiarize himself with the ele-

ments of the questions to be solved in order that he may perform his duties intelligently; where the statute vests him with discretion, he must act in good faith and with that *diligence, care* and *skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs.*" McLaughlin v. Lansford Boro School District, 335 Pa. 17, 24, 6 A.2d 291 (1939) (Emphasis supplied.)

Hahn v. Palmerton School District, 32 D. & C. 2d 91 (1963), is the leading case in Pennsylvania on the subject of awarding contracts for the transportation of public school pupils. Except for two principal factual differences, the result in this case would be the same as the decision in the Hahn case. This court concurs with the opinion of the Honorable Paul Campbell as he outlined the law in the Hahn case. An important distinguishing characteristic of the Hahn case is that competitive bids were requested, while they were avoided in the case presented to this court. The other significant point is that the Palmerton School Board requested bids on individual bus routes. It was the Palmerton School Board that specified the routes that were to be bid and negotiated, while in our case it was the contractors who wrote the specifications and divided the business. In the Hahn case, there was competition although for good reasons the contracts were not awarded to the lowest responsible bidder. Because there was competition, monopoly and possibly high prices were avoided.

Monopoly is the opposite of competition. An agreement between competitors to divide the business and fix the prices constitutes a monopoly. Such a practice is usually illegal. Here, the evi-

dence established that the contractors were permitted to divide the routes amongst themselves. However, there is no evidence that they combined to fix the rates. What is clear is that the procedure followed by the majority members of the Butler Area School Board and Committee eliminated competition and placed the school district in a most unfavorable bargaining position. It is true that the Butler Area School Board, either by renewing its contract with Route 38 Bus Lines, Inc., or by rejecting the second-year option, would anger and annoy many persons. The school board this year and last year has been confronted with a serious dilemma because of the prosecution of this particular contractor.

A solution this year might have been to negotiate with the other contractors to assume the Route 38 contract for the year 1977-78. There is nothing in the record to show that this was attempted or even considered.

The failure of the majority of the school board initially to offer the Route 38 1977-78 contract option to Kaltenbaugh, Tuck and Bryan Bros. and to other interested contractors at the very least gives the impression that the majority of the school board were not using good judgment as business managers for the school district.

In restricting the negotiations to Kaltenbaugh, Tuck and Bryan Bros. the majority members of the School Board exercised their discretion in an arbitrary and capricious manner. Approximately five other contractors had evidenced interest but were excluded from the negotiations.

A policy that eliminates competition is not a normal, average, or reasonable method of transacting public business. The majority members of the

school board abused their discretion by eliminating all competition. Even if it had been established that the contracts were the best obtainable, the action was still arbitrary and capricious. The procedure that was followed could only create suspicion of wrongdoing and distrust in the minds of citizens. Neither the elimination of competition nor the abrogation of an existing contract with a lower rate can be justified by the facts.

It is understandable that a school board would consult with potential contractors about bus routes. What is objectionable as a sound business practice is permitting the contractors to divide the routes and then bid on them without competition.

It may not be the practice throughout Pennsylvania, but it is the duty of a school board to encourage competitive bids for pupil transportation contracts.

Because of the many factors involved in rendering a service such as pupil transportation, there is no statutory requirement that the contract be awarded to the lowest responsible bidder. Even where there is such a requirement in the law, the determination of the lowest responsible bidder is usually left to the sound discretion of the governing body.

There may be no inconsistency in requesting competitive bids and then negotiating a contract with one who is not the low bidder. If the negotiation is done in good faith, a court will not interfere.

In this case, it is the board's unreasonable and unacceptable approach to the negotiating process that is objectionable.

Another factor in this case that was not explained and is not understandable, at least to this court, is the delay in the commencement of the negotiations for these contracts. There may be a good reason but it was not presented. In fact, the issue was not raised.

With the entry of the pleas of nolo contendere by the owners of Route 38 Bus Lines, the members of the school board must have recognized that they would be confronted with a problem. Even in the absence of such a problem, it would seem evident that sound business policy would dictate that contracts involving equipment and large capital expenditures be negotiated many months, if not a year, in advance. The failure to do so could be unfair to all the contracting parties assuming that the bargaining is conducted in good faith. Late bargaining would appear to place the school district at the greatest disadvantage by limiting, if not eliminating, the competition. In Butler, this has been demonstrated the second time in one year. During the final few weeks before school begins, the school board is under pressure to obtain a bus contract. It is unlikely at that point of time there are many owners with fleets of idle buses waiting to bargain for contracts. Late bargaining must generally favor the existing contractors because it reduces competition. If late bargaining is the practice, it may be a bad practice. When raised as an issue, the late initiation of negotiations without good reason could result in a school board being charged with bad faith.

## SUMMARY

Specific guidelines have not been, and are unlikely to be, established either by the General Assembly or the courts to aid school boards in the awarding of school transportation contracts. The members of the school board must use the sound judgment that they would employ in their own personal affairs. The sense of the decision in this case is simply that it was an abuse of discretion and that the majority of the members of the school board acted

arbitrarily and capriciously by creating a monopoly amongst three operators for the pupil transportation contracts.

Generally, the members of a school board would not abuse their discretion or be arbitrary and capricious in negotiations and contracting if: (1) The school board established and published the school bus routes; (2) the action was timely and permitted interested operators to submit proposals, or the school board solicited proposals from two or more competing and responsible operators; and (3) the contract is awarded for good reasons, not those that are based on some form of favoritism.

In the emergency confronting the school board, the present contractors and any potential contractors, the school board may find it exceedingly difficult to negotiate contracts satisfactory to any or all the parties. Under all the circumstances, it is unlikely that reasonable contracts can be negotiated at this time for a period that will exceed the current school year. However, the semicompetitive type of negotiations can be timely initiated for the 1978-79 transportation contracts.

## DECREE NISI

Now, August 24, 1977, upon consideration of this case and based on the attached findings of fact, discussion and conclusions of law, the court finds that the action of the Butler Area School Board in accepting the bids of Tuck, Kaltenbaugh and Bryan Bros. on June 21, 1977, for school transportation contracts is null and void. Defendants are hereby enjoined from executing said contracts.

This adjudication will become final unless exceptions thereto are filed within ten days. If no exceptions are filed within the ten-day period this decree nisi shall be entered as the final decree.

Defendant is ordered to pay the costs of the proceeding.

## OPINION SUR EXCEPTIONS

KIESTER, *P.J.*, and CHERRY, *P.J.*, Forty-Sixth Judicial District Specially Presiding. November 16, 1977 — The case is before the court en banc on defendant's exceptions to certain findings of fact, conclusions of law, and the decree nisi issued by the trial judge. The exceptions are dismissed, and the decree nisi made absolute.

## DISCUSSION

The issues in this case did not become moot as a result of the school board negotiating one-year contracts following the entry of the decree nisi. Should it be determined that the court erred in voiding the school board action of June 21, 1977, the school board and the contractors might then have the right to reconstitute said school board action by approving the bids for long-term bus contracts. Under the facts, the controversy was not ended. The school board has not concluded its day in court.

This court agrees with defendant's position and the authorities cited that ". . . in the absence of a statutory requirement, public advertising, soliciting bids and competitive bidding is not required." None of the stated procedures need be pursued as a matter of law.

This court is also in accord with defendant's statement that where competitive bidding is not mandated, public authorities "are only required to act in good faith and to the best interest of the muncipality . . ."

However, this court agrees with plaintiff's position that a school board acts arbitrarily and capri-

ciously, in bad faith and not in the best interest of the public, all as a matter of law, when, inter alia, it rejects "competitive negotiations," creates monopolies in negotiations and contracting and refuses to observe recommended business practices accepted by fiduciaries and the "reasonable man," in awarding substantial contracts.

## FINAL DECREE

Now, November 16, 1977, the exceptions are dismissed. The decree nisi of August 24, 1977, shall be entered as the final decree.